IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                              Plaintiff,                      Case No. 3:03 CV 732

        -vs-

                                                          <u>MEMORANDUM   OPINION</u>

RONALD K. OWENS,

                              Defendant.

KATZ, J.

## I. BACKGROUND

Plaintiff William T. Wuliger ("Wuliger") commenced this action against Defendant for recovery of commissions in connection with the sale of viatical investments. This case is an outgrowth of the *Liberte v. Capwill*[1] litigation which has spawned related litigation both in the state and federal courts. The essence of this action contends that Defendant Jay Ronald K. Owens ("Owens") entered into an agent sales agreement whereby he solicited individuals to invest in viatical settlements offered by Alpha Capital

---

[1] *Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D. Ohio) revolves around the viatical settlement industry. Plaintiff Liberte Capital LLC ("Liberte") and Intervening Plaintiffs Alpha Capital Group LLC and Integrity Management Partners, LLC (collectively "Alpha") were engaged in the business of purchasing insurance policies from terminally ill policyholders willing to sell their rights to the policies. Liberte also solicited investors for policies on the lives of seniors without terminal illness. Investors were solicited by Liberte and Alpha to purchase viatical life insurance investment programs whereby investors were matched in many cases with the policy on the terminally ill person or "viator".

Group ("Alpha"). In return for making these sales, Owens is alleged to have received approximately $118,381.39 in commissions.

Wuliger was appointed Receiver of Alpha in the fall of 2001. Thereafter, he was authorized by the Court in the *Liberte* action, in part, to:

> [U]se his best judgment to protect the rights of Alpha investors and to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of all Alpha investors.

(*Liberte*, Doc. No. 1290.) One year later those responsibilities included the right to pursue actions against Liberte and Alpha agents and brokers. (*Liberte*, Doc. No. 1758.) More recently, the Court clarified the expanded role of both the General and Alpha Receivers, stating that:

> [I]n keeping with the ultimate goal of maximizing the estates for the benefit of the investors, [the Receivers] are empowered to represent and pursue the interests of the investors directly. The Receivers shall further continue to carry out their duties and obligations as set forth by previous and existing Order of the Court. Finally, the Receivers shall continue to coordinate their efforts with class counsel to recover, protect and preserve receivership assets.

(Doc. No. 1982.)

Wuliger initiated this suit in April 2003 against Owens alleging the following claims: (1) violations of the 1933 Securities Act, 15 U.S.C. § 77; (2) violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78 j; (3) violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO")[2], 18 U.S.C. §§ 1962 and 1964©); (4) common law fraud; (5) fraud in the inducement; (6) breach of contract; (7) unjust enrichment; (8) conversion; (9) breach of fiduciary duty/breach of covenant to act in

---

[2] Contained within his opposition to the motion for dismissal at p. 13, the Receiver advises of dismissal of his civil RICO claim and the same will be reflected in the Court's disposition of the pending motions.

good faith and fair dealing; and (10) intentional or negligent misrepresentation.  Owens moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II. MOTION TO DISMISS STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint.  In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).  The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *Westlake*, *supra*, at 858.  *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2004).

## III. STATUTE OF LIMITATIONS

*A.  Statute of Limitations as to Counts One and Two*

In this action, the Defendant argues the federal securities claims are barred by the applicable statute of limitations/repose.  The Receiver, however, contends he does not seek to bring this cause of action on behalf of the Alpha, which is presently defunct, but for the benefit of the Receivership estate. The Plaintiff, therefore, disclaims the Defendant's "stands in the shoes" doctrine and disavows application of the statute of limitations/repose defenses which might be ascribed to Alpha itself.

1.  Receiver's Role Impacting on Statute of Limitations

3

Federal equity receivers are appointed to take control, custody, and/or management of property involved in litigation.  It is generally recognized that a receiver may bring suit to "accomplish the objective of the suit for which he or her appointment was made, or under the specific directions of the appointing court, or pursuant to his general duties to receive, control, and manage the receivership property."  12 Wright, Miller & Marcus, Federal Practice & Procedure § 2984 (2d ed. 1997).  *See also, Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 626 (6th Cir. 2003) ("question depends on the authority granted by the appointing court and actually exercised by the receiver");  65 Am. Jur.2d Receivers § 129 (2d ed) (powers of a receiver flow from statute, court rules, orders of appointment and subsequent orders of appointing court).  By the same token "[a] receiver stands in the shoes of the person for whom he has been appointed and can assert only those claims which that person could have asserted." *Armstrong v. McAlpin,* 699 F.2d 79, 89 (2d Cir. 1983).

The Receiver is correct that at the time he was appointed he did not stand in the shoes the Alpha investors.  In fact, it was not until October 2002  that the Court authorized the Receiver as follows:

> [A]ll claims against former agents and/or brokers of Alpha and Liberte for damages in contract or tort actions arising out of claims by investors are deemed to be assets of the receivership estates and must be filed by the Receivers, if at all.

*Liberte*, Doc. No. 1758.  Therefore, until this authorization was in place, the Receiver properly contends that he was prohibited from asserting these securities violation claims. Stated differently, until the grant of express authorization of the Court, the securities violations alleged herein could only have been asserted by the investors themselves.

There is no basis in law which allows circumvention of the applicable statute of limitations in situations where a non-governmental receiver is appointed by the court.  *See* 1 CLARK  ON RECEIVERS §

4

268.1 (3d ed. 1959) (generally the "mere appointment of a receiver does not in any way affect the running of the statute of limitations"). Arguments of a similar nature were rejected by the district court in *Friedlob v. Trustees of the Alpine Mut. Fund Trust*, 905 F.Supp. 843 (D. Colo. 1995). There a receiver of an investment trust brought suit against former administrators, contending securities violations under both the 1933 and 1934 Acts. In opposing summary judgment, the receiver opposed application of the one year statute of limitations and three year statute of repose under §§ 77m and 78j(e). After finding tolling principles inapplicable, the court rejected the receiver's attempt to characterize his status as on par with that of the SEC in an enforcement action. *Id.* at 852[3]. The district court determined that the one year statute of limitations and three year statute of repose were applicable to the court appointed receiver. *Id.* at 853.

Absent any authority which allows circumvention of the applicable statute of limitations, the Receiver's arguments advocating their commencement contemporaneous with his appointment are without merit. The Court next turns to whether commencement of this action was outside the statute of limitations and/or statute of repose.

2. Statutes of Limitations Relative to Securities Claims (Counts 1 and 2)

The starting point for this analysis begins with the relevant statute. Regarding statutory construction, the Sixth Circuit has set forth the following guidelines:

---

[3]

"Although receivers may be shielded by principles of immunity, that does not convert their claims into public actions for purposes of securities laws. A receiver's claim is distinct from an SEC action because it seeks damages, which the SEC is not authorized to pursue under the applicable five-year statute of limitations. Plaintiff provides no authority for his propositions that a receiver is not subject to the one-year/three-year period of limitations. I thus conclude that the one-year/three-year period of limitations specified in sections 13 and 9(e) applies to plaintiff's claims under the 1933 and 1934 Acts."

5

> "In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.1995). Moreover, where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United  States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation and internal punctuation omitted).

*Chapman v. Higbee Co.,* 319 F.3d 825, 829 (6th Cir. 2003), *cert. denied,* 124 S.Ct. 2902 (2004).

It is only when "a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress" that a court may "look beyond the language of the statute." *Dorris v. Absher,* 179 F.3d 420, 429 (6th Cir. 1999), citing *United States v. Turkett,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

The statute of limitations applicable to the claim under the 1933 Act is set forth at 15 U.S.C. § 77m, which states as follows:

> No action shall be maintained to enforce any liability created under section 77k or 77*l*(a)(2) of this title *unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence*, or, if the action is to enforce a liability created under section 77*l*(a)(1) of this title, unless brought within one year after the violation upon which it is based.  *In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.*

(Emphasis added.)   In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court adopted the one and three year periods of limitations found in sections 9(e) and 18(a) of the 1934 Act and in section 13 of the 1933 Act. Therefore, in order to maintain a private securities action under section 9(e), the action must be "brought

6

within one year after the discovery of the facts constituting the violation and within three years after such

violation."  15 U.S.C. § 78i(e).

   a.  Inquiry Notice

In the Sixth Circuit, the applicable one year statute of limitation is triggered by inquiry notice.

*New England Health Care Employees Pension Fund v. Ernst & Young,* 336 F.3d 495, 500 (6th Cir.

2003), *cert. denied,* 540 U.S. 1183 (2004).  *See also, Picard Chemical Inc. Profit Sharing Plan v.*

*Perrigo Co.,* 940 F.Supp. 1101, 1118 (W.D. Mich. 1996) (noting applicability of one and three year

rule to claims brought under both Exchange and Securities Acts as well as trigger under inquiry notice

standard).  *See also, Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.

1993), *cert. denied,* 511 U.S. 1085 (1994).

   In *New England,* the Sixth Circuit discussed considerations relevant to inquiry notice as follows:

> The majority view, [], is that knowledge of suspicious facts – "storm warnings," they are
> frequently called – merely triggers a duty to investigate, and that the limitation period
> begins to run only when a reasonably diligent investigation would have discovered the
> fraud. . . This view, we believe, reflects an appropriate balance between "the staunch
> federal interest in requiring plaintiffs to bring suit promptly. . . and the equally strong
> interest in not driving plaintiffs to bring suit . . . before they are able, in the exercise of
> reasonable diligent, to discover the facts necessary to support their claims. . .  We
> conclude, in accordance with the majority view, that the § 9(e) limitations period begins
> to run when a plaintiff should have discovered, by exercising reasonable diligence, the
> facts underlying the alleged fraud.

336 F.3d at 501.  (Citations omitted.)  Based upon this standard, the relevant issue is when "storm

warnings" were on the radar sufficient to alert the claimant that things were amiss, thereby triggering the

claimants to exercise reasonable diligence in discovering the facts forming the basis of their claim.

Moreover, the plaintiff is charged with the burden of establishing the action was commenced within the

statute of limitations, therefore he must demonstrate "the point at which he knew or should have known of the fraud." *Harner v. Prudential Securities Inc.,* 785 F.Supp. 626, 632 (E.D. Mich. 1992), *aff'd* 35 F.3d 565 (6th Cir. 1994).

The *Liberte* action was commenced in April 1999 and a general receiver was appointed[4] for the Capwill-related entities of VES and CFL. *Liberte,* Doc. No. 132. On May 27, 1999, Alpha along with Integrity Partners Management, LLC, moved to intervene and for emergency appointment of a receiver. *Liberte*, Doc. Nos. 86 and 87. In September 2000, John Wayne Lazar also sought to intervene in the *Liberte* litigation. Based upon the filings in *Liberte*, it is clear that all investors, both Liberte and Alpha, were on notice of problems with their investments as early as July 1999 and certainly no later than July 2000. According to those documents, they were aware of the purported fraud by Capwill and VES and the resulting havoc upon their monies. The second status report of the General Receiver, in October 2000 (*Liberte*, Doc. No. 787), was addressed to recover commissions from Liberte and Alpha agents and brokers. Counsel for the intervenor Alpha and Plaintiff herein was also aware of the General Receiver's efforts and/or intentions regarding commission recoveries. Moreover, the information was not only contained on the Court's docket but also on the General Receiver's website aimed primarily at informing the investors.

This Court is mindful that inquiry notice does not require knowledge of all facts necessary to bring an action. *See Fujisawa Pharmaceutical Co., Ltd v. Kapoor,* 115 F.3d 1332, 1334-1335 (7th Cir. 1997); *Caviness v. Derand Resources Corp*., 983 F.2d 1295, 1303 (4th Cir. 1993). *See also In*

---

[4]

Initially Frederick M. Luper was appointed as Receiver and was succeeded by Victor M. Javitch on June 26, 2000 (*Liberte,* Doc. No. 562).

*re Worldcom, Inc. Securities Litigation,* 294 F.Supp.2d 431, 444-445 (S.D.N.Y. 2003);  *In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d 351, 379-380 (S.D.N.Y. 2003), *aff'd,* 396 F.3d 161 (2d Cir. 2005).  However, considering the relevant information available to the investors, circumstances were sufficient to place the investors on notice as to serious problems with their investments.  Despite the evolving nature of the *Liberte* case, the investors knew the identities of their agents as the agents were the conduit through which the viatical settlements were presented to them.   The pursuit of information and/or claims relative to those agents by the investors was not prohibited by the Court until  October 2002, as previously referenced.   In this Court's view, the "storm warnings" were brewing and sufficiently developed to have placed a reasonable investor on notice as to the possibility of misrepresentations no later than the end of 2000.   Since this litigation was not commenced until May 2003, it is clearly outside the one year statute under the applicable statutes of limitations.

b.  Statute of Repose

Assuming *arguendo* that this action was timely filed following inquiry notice, the analysis must also consider  application of the three year statute of repose.  The statute clearly states that "[*i]n no event* shall such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public or under section 77l(2) of this title *more than three years after the sale*."   15 U.S.C. § 77m.

Unlike statutes of limitations, statutes of repose serve to extinguish the claim and "rest[] on the time from some initiating event unrelated to an injury." *Combs v. International Ins. Co.*, 354 F.3d 568, 589 n.11 (6th Cir. 2004) (citation omitted).  Relevant to the issue at hand, claims brought after the three year period of repose which are triggered by the last event underlying the claim are barred regardless of

9

when the plaintiff discovered the facts.  *See Walck v. Am. Stock Exch.,* 687 F.2d 778 (3d Cir. 1982), *cert. denied,* 461 U.S. 942 (1983);  *In re Integrated Res. Inc., Real Estate Ltd. Partnerships Sec. Litig.,* 851 F.Supp. 556, 567 (S.D.N.Y. 1994) (three-year statute of limitations period absolute and cannot be tolled under the fraudulent concealment or discovery doctrines).

The statutory language identifies a sale as the triggering event. While the complaint does not specify the dates of sales by the Defendants, construing the allegations most favorably to the Plaintiff and in light of the preliminary injunction by the Court (in the *Liberte* case) on August 1, 1999, sales of viaticals occurred no later than that date.   Accordingly, if the last sale occurred in July 1999, the applicable three year statute of repose would have run no later than July 2002.

The Receiver also contends that application of the statute of repose could not have commenced and been extinguished before it was possible to commence this action.  However, a recent decision from the Second Circuit addresses this concern:

> [A] statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not have, discovered that she has a cause of action.

*P. Stolz Family Partnership L.P. v. Daum,* 355 F.3d 92, 102-103 (2d Cir. 2004), citing *Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 32 F.3d 697, 704 (2d Cir. 1994).  The Court in *Stolz*[5] explained the rationale as follows:

---------------------------------

[5]

  *Stoltz* involved unregistered securities and whether the statute of repose was triggered upon the first bona fide offering to the public or the last offering.  In its decision, the Second Circuit noted that the SEC in its *amicus* brief provided "evidence suggesting that Congress intended the three-year period to begin to run when a security is *first* sold to the public."  *Id.* at 105 (emphasis in original).

10

In general, a statute of repose acts to define temporally the right to initiate suit against a defendant after a legislatively defined time period.  Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit. . .

In principle, by limiting the substantive or procedural rights of plaintiffs, all statutes of limitation or repose always tend to cut against the remedial results that plaintiffs might otherwise enjoy.  And these remedial results may be best furthered, without losing one of the principal benefits of a statute of repose--to provide an easily ascertainable and certain date for the quieting of litigation--by lengthening the period before repose takes effect.

*Id.* at 102-104.

The Receiver is correct that a purpose behind federal securities laws is protecting investors.  In this instance, the Court is well aware of the diligent efforts of the Receiver given the complexity of the *Liberte* litigation as well as the Court's directives and subsequent expansions on the Receiver's authority. The Court also recognizes the Receiver's efforts in the *Liberte*-related litigation, such as the present action, all in the name of marshaling assets for the benefit of the investors.

By setting statutes of limitations and statutes of repose, however, Congress also recognized a definitive end to liability from suit.  In considering statutory language, a court must be careful not to "construe a statute in a manner that renders part of the law superfluous."  *United States v. Perry,* 360 F.3d 519, 537 (6th Cir. 2004) (citations omitted).   The Receiver's position that the statute of limitations has yet to be commenced would fly in the face of straightforward statutory construction as advocated by the Sixth Circuit and run contrary to Congress's clear intent.

The Receiver cannot properly claim to have acquired this claim free from infirmity since to accept such a premise is tantamount to obliterating the relevant statutes of limitations/repose.  This view does not

11

support the general jurisprudence regarding statutes of limitations[6] and would require this Court to create

an exception without a basis in law.  In the absence of statutory authority to the contrary, the Court finds

as a matter of law that the securities claims are untimely.

*B.  Impact of Sarbanes-Oxley*

In the wake of the Enron debacle, Congress enacted the Sarbanes-Oxley Act[7] which

extended the statute of limitations relative to securities fraud claims as follows:

TIME LIMITATIONS ON THE COMMENCEMENT OF CIVIL ACTIONS ARISING UNDER ACTS OF CONGRESS

Notwithstanding subsection(a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78(a)(47)[8]), may be brought not later than the earlier of–

(1) 2 years after the discovery of the facts constituting the violation; or
(2) 5 years after such violation.

28 U.S.C. § 1658(b).  Previously, the statute of limitations had been 1 and 3 years, respectively.  The

applicability provisions of the statute notes that this section "shall apply to all proceedings addressed by

this section that are commenced on or after the date of enactment of this Act [July 30, 2002]."

1.  *Judicial Interpretation of Sarbanes-Oxley*

---

[6]

"Statutes of limitation are statutes of repose representing 'a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Currency $515,060.42*, 152 F.3d 491, 503 (6th Cir. 1998), citing *United States v. Kubrick,* 444 U.S. 111, 117 (1979).

[7]

Public Company Accounting Reform and Investor Protection Act of 2002, Publ. L. No. 107-204 § 804, 116 Stat. 745, 801, codified at 28 U.S.C. § 1648(b).

[8]

"The term 'securities laws' means the Securities Act of 1933 (15 U.S.C. 77a et seq), . ."

Thus far, only a handful of courts have had occasion to consider the retroactivity of Sarbanes-Oxley.  The district court in *Roberts v. Dean Witter Reynolds,* 2003 WL 1936116 (M.D.Fla. March 31, 2003) (unpublished) was the first to consider the retroactivity of Sarbanes-Oxley and its impact on reviving a securities fraud claim barred under the previous statute of limitations.  There, the court found the Act served to revive plaintiffs' claims, based  upon the statements of Senator Leahy made on July 10, 2002, and upon the congressional record, which addressed the application of the provision to then pending legislation.

The next district court to consider this issue was in the context of a case involving investors suing principals of a defunct securities underwriter.  *In re Heritage Bond Litigation,* 289 F.Supp.2d 1132 (C.D. Cal., Jan. 6, 2003).  There, the district court determined the plaintiffs' claims were barred by the existing statute of limitations and could not be revived by the amendments under Sarbanes-Oxley.  The court found the lack of clear direction on this issue in the statutory language coupled with the case law which prohibited retroactivity where it would "alter the substantive rights" and "increase a party's liability," *Id.* at 1148, citing *Chenault v. United Postal Serv.,* 37 F.3d 535, 539 (9th Cir. 1994).

A subsequent action involving claims of security fraud was also challenged as being outside the statute of limitations in *Glaser v. Enzo Biochem, Inc.,* 303 F.Supp.2d 724 (E.D. Va July 16, 2003), *aff'd in part,* 2005 WL 647745 at *4 (4th Cir., March 21, 2005) ("plaintiffs' refiling after Sarbanes-Oxley took effect did not revive any claim that was otherwise barred by the statute of limitations").  A primary issue was whether the Sarbanes-Oxley amendment revived the plaintiffs' claims which were barred under the previous one year statute of limitations.  The plaintiffs in *Glaser* filed two complaints, one prior and one subsequent to the Sarbanes-Oxley amendment.  In rejecting the plaintiffs' argument of

13

reviving the claims vis-a-vis Sarbanes-Oxley, the district court noted the Supreme Court's direction on

this issue as follows:

> While Congress may enlarge a limitations period, Congress' acts do not revive a cause of
> action that has become time-barred unless Congress specifically provides for retroactive
> application. *See Hughes Aircraft Co. v. United States,* 520 U.S. 939, 950, 117 S.Ct..
> 1871, 138 L.Ed.2d 135 (1997) ("extending a statute of limitations after the pre-existing
> period of limitations has expired impermissibly revives a moribund cause of action . . . a
> newly enacted statute of limitations that lengthens the applicable statute of limitations may
> not be applied retroactively to revive a plaintiff's claim that was otherwise barred under
> the old statutory scheme"); *INS v. St. Cyr,* 533 U.S. 289, 317, 316, 121 S.Ct. 2271,
> 150 L.Ed.2d 347 (2001) ("a statement that a statute will become effective on a certain
> date does not even arguably support that it has any application to conduct that occurred
> at an earlier date") (stating that while Congress has the power to enact laws with
> retroactive effects, it must clearly and unambiguously state that the law applies
> retroactively).

*Id.* at 733-734.

A similar conclusion was reached by the district court in *In re: Enterprise Mortgage*

*Acceptance Co., L.L.C.,* 295 F.Supp.2d 307, 312-317 (S.D.N.Y. 2003), *aff'd,* 391 F.3d 401 (2d

Cir. 2004), wherein the court rejected plaintiffs' contention that the language of the statute was evidence

of Congress' express intent to revive stale claims.  The court further relied on the Supreme Court's

decision in *Hughes* for the proposition that elimination of a prior defense created a new cause of action.

Interestingly, the court noted that while the Fifth, Eighth, Ninth, Tenth and Eleventh Circuits adopted a

similar position in connection with an analogous statute of limitations, a contrary position taken by the

Sixth Circuit in the *Forest* action was distinguishable since it was determined prior to the decision in

*Hughes*.

Earlier last year, the district court in *In re Enron Cop. Securities, Derivative & ERISA*

*Litigation,* 2004 WL 405886 (S.D. Tex. Feb. 25, 2004) (unpublished), considered the same issue in a

motion to intervene by a putative class.  In its analysis, the court took note of the test under *Landgraf* as well as noting the cautionary language in *Hughes*. The court examined several appellate decisions relative to analogous statutes, such as the Financial Institutions Reform, Recovery and Enforcement Act or Religious Freedom Restoration Act, all of which agreed upon the requirement of a clear expression of Congressional intent before determining that the absence of specific intent on retroactivity precluded retroactive application of Sarbanes-Oxley.  *See also, Quaak v. Dexia, S.A.,* 357 F.Supp.2d 330, 336 (D.Mass. 2005) (declining to find Sarbanes-Oxley retroactive); *Lieberman v. Cambridge Partners, L.L.C.,* 2004 WL 1396750 (E.D. Pa. June 21, 2004) (unpublished) (finding that a cause of action extinguished prior to the enactment of Sarbanes-Oxley was time-barred).

In contrast, the district court in *ATO RAM II, Ltd v. SMC Multimedia Corp.,* 2004 WL 744792 (S.D.N.Y. April 7, 2004), determined that Sarbanes-Oxley applied only to the claims under § 10(b) since those claims *were not yet barred at the time the amendments went into effect*.  The court further found Sarbanes-Oxley did not apply to § 12 violations.  *Id.* at *5 citing *In re Worldcom, Inc. Secs. Litig.,* 294 F.Supp.2d 431, 444 (S.D.N.Y. 2003); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.,* 272 F.Supp.2d 243, 265 (S.D.N.Y. 2004).  *See also, Friedman v. Rayovac Corp.,* 295 F.Supp.2d 957, 975 (W.D. Wis. 2003).

In addition to the Second and Fourth Circuits, the Seventh Circuit joined the majority of courts determining Sarbanes-Oxley does not revive extinguished claims.  *See Foss v. Bear, Stearns & Co., Inc.,* 394 F.3d 540, 542 (7th Cir. 2005).

With this case law in mind, the Court turns to the retroactivity analysis under *Landgraf*.

2.  *Analysis under Landgraf*

15

In *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), the Supreme Court reiterated the presumption against retroactivity and set forth the test for rebutting that presumption:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

In conducting this analysis, the first question to be determined is whether the text of the statute expressly prescribes a temporal reach. The Supreme Court has addressed this standard as follows:

> The standard for finding such unambiguous direction is a demanding one. "[C]ases where this Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328, n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

*I.N.S. v. St. Cyr,* 533 U.S. 289, 316-317, 121 S.Ct. 2271, 2288, 150 L.Ed.2d 733 (2001).

The courts which have examined the issue of retroactivity regarding Sarbanes-Oxley under *Landgraf* have determined the statutory language does not meet the express prescription test. *See Roberts v. Dean Whitter Reynolds, Inc.,* 2003 WL at *2; *Glaser v. Enzo Biochem, Inc.,* 303 F.Supp.2d at 734; *In re Enterprise Mortgage Acceptance Co., LLC,* 295 F.Supp.2d at 316; *In re Enron Corp. Sec.,* 2004 WL 405886 at *17. Having again examined the statutory language set forth above, this Court does not find language which is "so clear that it could sustain only one interpretation" as to retroactivity. *St. Cyr, supra* (citation omitted).

16

The next step in the *Landgraf* analysis considers "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf,* 511 U.S. at 270. As noted by the Court in *St. Cyr*, "[a] statute has retroactive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. . .'" 533 U.S. at 321. (Citations omitted.)

Although not presented with the precise issue of a revival of time-barred claims, the Supreme Court in *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), confronted the issue of whether an amendment to the False Claims Act allowed private parties to assert claims previously reserved to the government. There, the Court touched upon the issue of allowing an extended statute of limitations to revive a previously extinguished cause of action as follows:

> The 1986 amendment would revive that action, subjecting Hughes to previously foreclosed *qui tam* litigation, much like extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action, see, *e.g. Chenault v. U.S. Postal Service,* 37 F.3d 535, 537, 539 (C.A. 9 1994) (relying on *Landgraf* in concluding that "a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability" (internal quotation makes omitted)). This is true even if a cause of action remained open to some other party.

*Id.* at 950. Applying the *Hughes* reasoning to this action, extension of Sarbanes-Oxley to a claim which prior to the amendment would have been extinguished would divest a defendant of a material defense. This is the essence of a prohibited retroactive effect discussed in *Landgraf*. 511 U.S. at 267-269.

The Court must then ascertain whether there is clear congressional intent which supports retroactivity. Legislative history consists of reports as well as remarks and statements; however, as noted

by *Landgraf* "partisan statements . . . cannot plausibly be read as reflecting any general agreement."

511 U.S. at 262. Earlier, the Court in *Garcia v. United States,* 469 U.S. 70, 76, 105 S. Ct. 479, 483,

83 L.Ed.2d 472 (1984), discussed the weight given to legislative history as follows:

> In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which "represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969). We have eschewed reliance on the passing comments of one Member, *Weinberger v. Rossi*, 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982), and casual statements from the floor debates. *United States v. O'Brien,* 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In *O'Brien, supra*, 391 U.S., at 385, 88 S.Ct., at 1683, we stated that Committee Reports are "more authoritative" than comments from the floor, and we expressed a similar preference in *Zuber, supra*, 396 U.S., at 187.

(Footnote omitted.)

The Senate Judiciary Report of May 2002, in its section by section analysis, reviewed the aspect

addressing the statute of limitations as follows:

> This provision states that it is not meant to create any new private cause of action, but only to govern already existing private causes of action under federal securities laws.

S. REP. NO. 107-146 at *12 (2002). Moreover, the additional views of several committee members

commented on the existence of private rights of action:

> We agree that Section 4 of this bill is not intended to create a new private right of action or to broaden any existing private right of action.

*Id.* at *29. Subsequent to this Report, Senator Leahy requested that his floor remarks on the final

passage of Sarbanes-Oxley be included in the record entitled Legislative History of Title VIII of HR

2673: The Sarbanes-Oxley Act of 2002. 148 CONG. REC. S7418-01 (2002). In this section by section

analysis, the report addresses the proposed lengthened statute of limitations in the following manner:

> This provision states that it is not meant to create any new private cause of action, but
> only to govern all the already existing private causes of action under the various federal
> securities laws that have been held to support private causes of action. This provision is
> intended to lengthen any statute of limitations under federal securities law, and to shorten
> none. The section, by its plain terms, applies to any and all cases filed after the effective
> date of the Act, *regardless of when* the underlying conduct occurred.

*Id.* (Emphasis added.) When this latter report is read in conjunction with the former senate judiciary

report, an inconsistency in the legislative history precludes a finding that there was clear congressional

intent to overcome the presumption against retroactivity. *See In re Enterprise Mortgage*, 295

F.Supp.2d at 312-317 (providing thorough examination of retroactivity of Sarbanes-Oxley under

*Landgraf* analysis with special emphasis on legislative history and lack of clear congressional intent).

In sum, both the language and legislative history do not support a finding that Sarbanes-Oxley is

to be applied retroactively. Accordingly, the Receiver's arguments are without merit and the Defendant's

motion to dismiss is well taken as to the claims contained in Counts 1 and 2.

*C. Remaining State Law Claims*

The Defendants also seek dismissal of the remaining common law claims on the basis that they

are precluded by the statute of limitations under Ohio Rev. Code § 1707.43, which states in pertinent

part:

> No action for the recovery of the purchase price as provided for in this section, and no
> other action for any recovery based upon or arising out of a sale or contract for sale
> made in violation of Chapter 1707. of the Revised Code, shall be brought more than two
> years after the plaintiff knew, or had reason to know, of the facts by reason of which the
> actions of the person or director were unlawful, or more than four years from the date of
> such sale or contract for sale, whichever is the shorter period.

The Plaintiff refutes this contention and argues that the applicable statute of limitations attendant to the remaining common law claims do not require application of § 1707.43.

The Ohio Supreme Court has addressed how to assess resolution of such a dispute:

> In determining which statute of limitations should be applied to a particular cause of action, this court has held that " * * * courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded.  The grounds for bringing the action are the determinative factors [;] the form is immaterial."

*Lawyers Cooperative Publishing Co. v. Muething,* 65 Ohio St.3d 273, 277-278, 603 N.E.2d 969, 973 (1992), citing *Hambleton v. R.G. Barry Corp.* 12 Ohio St.3d 179, 183, 465 N.E.2d 1298, 1302 (1984).  With the guidance of the Ohio Supreme Court, this Court turns to the complaint at issue.

Count Four alleges common law fraud as follows:

70) Defendant has made false representations to investors as to the relative safety of investments in viatical settlements and such false representations were made either with knowledge of the inherent danger in investing dollars in viatical dollars in viatical settlements or with utter disregard and recklessness as to the truth or falsity pertaining to the safety of viatical settlements.

71) Defendant made such false representations to investors with the intent of deceiving investors into the false belief that investments in viatical settlements are essentially risk free investments that provide a high rate of return.

72) Investors could justifiably rely upon the false representations of Defendant since Defendant would be reasonably perceived to be an expert in the area of investments in viatical settlements or, at least, Defendant would be perceived as highly knowledgeable about investments in viatical settlements.  Defendant occupied a position of trust and influence over the investors whom he defrauded who were unsophisticated investors.

73) Investors did, in fact, lost substantial sums of money by investing in viatical settlements, predicated on the false representations of Defendant.

74) Defendant's actions demonstrate malice, aggravated or egregious fraud, oppression and insult.

75) Wherefore, Plaintiff is therefore entitled to an award of damages consisting of the dollar amounts lost by investors who had relied on Defendant's representations $563,720.89 plus prejudgment interest calculated from the point in time that each investor remitted money to Alpha for the purchase of fractional interests in one or more policies, and Plaintiff is also entitled to an award of punitive damages, as a result of Defendant's egregious conduct in marketing viatical settlements, as a representative of Alpha.

The subsequent state law claims include fraud in the inducement (Count Five), breach of contract (Count Six), unjust enrichment (Count Seven), conversion (Count Eight), breach of fiduciary duty and/or breach of covenant to act in good faith and breach of covenant of fair dealing (Count Nine), and intentional or negligent misrepresentation (Count Ten). All of the remaining state law claims seek damages representing lost investment dollars and/or unearned commissions relative to the viatical investments.

Ohio courts have been fairly consistent in their approach in finding that the shorter statute of limitations under § 1704.43 is applicable to actions arising from sales of or contracts relating to securities. For example, in *Lynch v. Dean Witter Reynolds, Inc.,* 134 Ohio App.3d 668, 731 N.E.2d 1205 (1999), investors brought suit styled, in part, as a breach of contract related to the sale of limited partnership interests . The trial court held the shorter statute of limitations under § 1704.43 applied as well as that for a breach of a written contract and determined the following:

Specific statutory provisions prevail over conflicting general provisions unless the legislature's intent that the general provision prevail is clear. R.C. 1.51; *State v. Volpe* (1988), 38 Ohio St.3d 191, 527 N.E.2d 818, paragraph one of the syllabus; *Haack v. Bank One, Dayton, N.A.* (Apr. 11, 1997), Montgomery App. No. 16131, unreported, 1997 WL 205998. Accordingly if the investors claims can be characterized both as violations of the specific provisions of R.C. Chapter 1707 and as breaches of their contracts with Dean Witter, *the limitations period set forth in R.C. 1707.43 prevails over the general limitations period for breach of contract claims.*

*Id.* at 671, 731 N.E.2d at 1207. (Emphasis added.) *See also, Helman v. EPL Prolong, Inc.,* 139 Ohio App.3d 231, 244, 743 N.E.2d 484, 494 (2000) (prospective purchases brought claims in the nature of fraud, breach of fiduciary duty, breach of contract regarding purchase of stock certificates never received which were deemed barred under § 1707.43 as their claims were based upon a "fraudulent sales of securities"); *Hater v. Gradison Division of McDonald and Co. Sec., Inc.,* 101 Ohio App.3d 99, 112-113, 655 N.E.2d 189, 197-198 (1995) (claims of fraud were "inextricably interwoven" and related to sales of securities thereby subject to statute of limitations under § 1707.43). *See also, Goldberg v. Cohen,* 2002 WL 1371031, Blue Sky L. Rep. P (CCH)74,278 (Ohio App. 7 Dist. 2002) (unpublished) (fraud action premised upon sale of securities was subject to two year statute of limitations under § 1707.43 versus four year statute under § 2305.09).

In this instance, the claims sounding in common law fraud, fraud in the inducement, breach of contract, and unjust enrichment clearly arise from the sale of the viatical investments, thus falling under the more specific limitations period in § 1707.43. *Lynch, supra.* The same is true for the claims alleging breach of fiduciary duty, intentional or negligent misrepresentation and negligent training and supervision. *See Ware v. Kowers,* 2001 WL 58731 (Ohio App.10 Dist. 2001) (unpublished) (finding § 1707.43 applied to claims of breach of fiduciary duty, conversion, breach of contract and fraud as they were contrary to the prohibition against fraud in the sale of securities). *See also, Adams v. Dean Witter Reynolds, Inc.,* 1999 WL 401394 (Ohio App. 3 Dist. 1999) (claim alleging that account was negligently and/or fraudulently managed was controlled by statute of limitations contained in § 1707.43). *But see Ferritto v. Alejandro,* 139 Ohio App.3d 363, 743 N.E.2d 978 (2000) (declining to apply § 1707.43 as the money given to insurer was not invested in funds as represented, therefore not based upon

22

violations of securities' purchase nor did the investors seek return of monies invested).  The present action is distinguishable from that in *Ferritto* as the prayer seeks return of the investments as well the unearned commissions which are considered "other action[s] for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707."  O.R.C. § 1707.43.

Despite a determination that the applicable statute of limitations under § 1707.43 controls, the Defendant must establish that the relevant time frame has passed, thus rendering the claims untimely. The Receiver reiterates the same arguments presented in support of his position relative to the timeliness of the federal securities claims.  In short, despite his appointment in mid-2000, because the Court did not authorize the Receivership to pursue actions in contract or tort until October 2002, Plaintiff argues this latter date should commence the running of the statute of limitations.  For the same reasons as noted in Section III-B of this Memorandum Opinion, the Receiver's argument is not well taken.   As noted previously, a reasonable investor would have been on notice as to the problems by the end of 2000. Consequently, because this suit was commenced in April 2003, it falls outside the two year statute of limitations and precludes viability of the state law claims.

### IV. CONCLUSION

Having given due consideration to the parties' respective position, the Court finds the Defendant's motion to dismiss the complaint (Doc. No. 11) is well taken and granted.

IT IS SO ORDERED.

 *s/ David A. Katz*
DAVID A. KATZ
SENOR U. S. DISTRICT JUDGE